IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| Dan Kiernan, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Richard McKay Used Books, Inc. | ) Case No: 1:15CV393 |
| d/b/a | ) COMPLAINT |
| McKay Used Books and CDs, | ) |
| | ) |
| Defendant. | ) |

## VERIFIED COMPLAINT

### Introduction

1. Plaintiff, DAN KIERNAN ("Mr. Kiernan"), alleges that Defendant, RICHARD MCKAY USED BOOKS, INC., d/b/a MCKAY USED BOOKS AND CDS, has and continues to violate his rights under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, et seq., by refusing to make its bookstore accessible to him.

2. Specifically, Mr. Kiernan alleges that Defendant has violated his right to enter its bookstore, and buy or sell used books. Based on Mr. Kiernan's disability, which impairs his concentration and causes him to move and function slowly, Defendant banned him from returning to its store to sell or buy books. Defendant refused and continues to refuse to allow Mr. Kiernan to use the substantial store credit he earned by selling books to Defendant.

3. Therefore, Defendant has unlawfully discriminated against Mr. Kiernan by preventing him from entering and buying and selling books at its used bookstore, in violation of his rights under the ADA. Mr. Kiernan seeks an injunction requiring Defendant make its premises accessible to him, and award him his costs and attorneys' fees incurred in this action.

### Jurisdiction and Venue are Proper in This Court

4. Jurisdiction is proper in this Court under 28 U.S.C. §133 because this action arises under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et. seq.* (the "ADA"), which prohibits discrimination against persons with disabilities with regard to their full participation in and access to places of public accommodations.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as it arises as a federal question and under a federal civil rights law, respectively.

6. Venue is proper under 28 U.S.C. § 1391 because the circumstances giving rise to this cause of action occurred within this District, and because Defendant operates its bookstore within this District.

### Parties

7. Plaintiff, Dan Kiernan, ("Mr. Kiernan"), is domiciliary of the Commonwealth of Virginia, and a resident of Fairfax County.

8. Mr. Kiernan has a diagnosis of severe major depressive disorder. The features of his disorder include: persistent depressed mood; impaired focus and poor concentration; psychomotor retardation (slow movement); pronounced lethargy, fatigue, and decreased energy; feelings of hopelessness and pessimism; sleep disturbance; anhadonia; pervasive apathy; suicidal ideation; extreme social isolation; and periods of near immobility. His impairment substantially limits his functioning in nearly every domain, including major life activities of sleeping, concentrating, working, and performance of manual tasks such as loading books into bins.

9. Mr. Kiernan is an individual with a disability as defined by the ADA because he has "a physical or mental impairment that substantially limits one or more of the major life activities." 42 U.S.C. §12102 (2)(A).

10. Mr. Kiernan reads a variety of books as part of his therapy to improve his concentration. He regularly visits used bookstores to obtain new reading material while selling his used books to supplement his disability benefits.

11. Defendant operates McKay Used Books and CDs ("bookstore"), which sells and buys used books and other media.

12. Defendant is a registered Virginia Corporation, and can be served with process by serving its registered agent, Frances Stribling Anderson, at McKay Used Books and CDs, 8389 Sudley Road, Manassas, VA 20109, in Prince William County.

## Statement of Facts

13. Defendant's bookstore is located in a large building in one part of a strip mall. It houses a counter for customer's purchases of books from the bookstore, and a separate counter for customers selling used books.

14. Defendant posted signs instructing sellers to load their used books into bins for the bookstore to consider purchasing. Sellers are limited to 4 bins of books per visit, but no time limit for loading books into bins is posted.

15. Defendants evaluate the books offered for sale by customers, determine whether or not to purchase them, and offer store credit or cash for the used books.

16. Mr. Kiernan compared resale rates for various local used bookstores and determined Defendant's bookstore to provide the best rate.

17. Mr. Kiernan visited Defendant's bookstore every few weeks, beginning on or about February/ March 2014, driving 45 minutes from his home to do so.

18. On June 3, 2014, Mr. Kiernan went to the bookstore with a friend, who also had used books to sell.

19. Mr. Kiernan and his friend each asked for 4 bins for their used books. The bookstore assistant manager instructed them that they were only allotted 4 bins of books between them, instead of 4 bins each.

20. Mr. Kiernan's friend discussed this policy with the assistant manager, while Mr. Kiernan continued to load books into bins. As he was loading a bin, the assistant manager took the bin he was loading and informed Mr. Kiernan that he was too slow.

21. Mr. Kiernan asked the assistant manager if there was a time limit for loading books. She told him there was no time limit, but repeated that he was too slow.

22. On June 10, 2014, Mr. Kiernan returned to the bookstore alone to sell additional books.

23. Mr. Kiernan began to load his books into bins. The assistant manager approached him, told him he was too slow at loading his bins, and banned him from returning to the bookstore.

24. Mr. Kiernan asked if the assistant manager was banning him from the bookstore due to the length of time it took him to fill his bins.

25. The assistant manager replied that it had taken Mr. Kiernan twenty minutes to load his bins, and that she would take his books that day; however, he was not allowed to return to the bookstore after that day.

26. Mr. Kiernan walked to the section of Defendant's bookstore housing books for sale, intending to use store credits he received as payment from previous visits.

27. The assistant manager ordered Mr. Kiernan to stop, informed him he was banned from the entire store, and that he would not be permitted to buy any books. When Mr. Kiernan asked, she confirmed that this ban was because he loaded his books too slowly.

28. The assistant manager then instructed Mr. Kiernan to either sit in a chair and wait, or to leave the bookstore while she evaluated the books she collected in his bins.

29. Mr. Kiernan left the bookstore. He returned less than an hour later and collected the books Defendant declined to purchase, a store credit of $13.68, and a cash payment for the books Defendant accepted.

30. Approximately one week later, Mr. Kiernan telephoned Mr. Brooks, the bookstore Manager, to discuss the ban and the preceding events.

31. Mr. Kiernan informed Mr. Brooks that his disability causes him to load books slowly.

32. Mr. Brooks informed Mr. Kiernan that the scenario he described did not reflect the bookstore's policy, and he would look into the ban.

33. Mr. Brooks returned Mr. Kiernan's phone call later that day.

34. Mr. Brooks informed Mr. Kiernan that the ban remained in place. When asked for clarification about the reasons for the ban, Mr. Brooks refused.[1]

35. Mr. Brooks informed Mr. Kiernan that the ban was permanent.

36. Mr. Kiernan contacted the disAbility Law Center of Virginia ("dCLV").

37. In response, dCLV sent letters to Ms. Frances Anderson ("Ms. Anderson"), Defendant's registered agent, on July 31, 2014, August 19, 2014, and August 28, 2014, requesting that

---

[1] This rationale was later identified by Mr. Brooks as loading books too slowly. *See*, ¶41.

the bookstore lift the ban on Mr. Kiernan and instruct her employees to allow Mr. Kiernan additional time in accordance with the ADA. Exhibit A-C.

38. Ms. Anderson responded in a letter received September 3, 2014. Exhibit D.

39. In her letter, Ms. Anderson asked dCLV to contact Mr. Brooks to get further information about Mr. Kiernan's ban.

40. Mr. Brooks emailed dCLV on September 18, 2014.

41. In his email, Mr. Brooks stated the following: "[T]he average seller takes ten minutes to load their wares into our bins. After thirty minutes Mr. Kiernan was asked to make room for others while he fills the bins. We feel this is more than a reasonable amount of time to complete the task. Due to Mr. Kiernan's behavior, permission to patron this family book store is denied." [sic] Exhibit E.

42. Mr. Kiernan asserts that the ban constitutes a barrier to access in violation of Title III of the ADA.

43. Mr. Kiernan retains $143.04 in store credit for Defendant's bookstore from previous sales of his used books that he is unable to use because Defendant has banned him from the bookstore.

44. If Defendant lifts its ban prohibiting Mr. Kiernan from entering its bookstore and fully enjoying the services it offers there, Mr. Kiernan would return.

## Cause of Action

### Defendant violated and continues to violate the Americans with Disabilities Act

45. At all relevant times, Mr. Kiernan has been and remains a person with a disability for purposes of the ADA.

46. At all relevant times, Defendant has operated and continues to operate a place of public accommodation for purposes of the ADA, because its bookstore is a "sales or rental establishment." 42 U.S.C. § 12181(7)(E).

47. Because Defendant operates a place of public accommodation, it is subject to the prohibitions and requirements of Title III of the ADA. 42 U.S.C. §12181, *et seq.*

48. Title III of the ADA states:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operated a place of public accommodation. 42 U.S.C. §12182 (a).

49. Title III of the ADA defines "discrimination" by a public accommodation as including

> a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;. 42 U.S.C. §12182 (b)(2)(A)(ii).

50. Defendant has refused to allow Mr. Kiernan additional time to load his used books into bins, refused to help him load the bins, or offer any other appropriate and reasonable accommodations that would allow Mr. Kiernan the full and equal enjoyment of its services to which he is entitled.

51. Allowing Mr. Kiernan additional time to load his books into a bin does not fundamentally alter the nature of the service Defendant's bookstore provides, which is the buying and selling of used books and media. There is sufficient room for multiple customers and multiple bins at the bookstore's resale counter.

52. Assuming *arguendo* that Mr. Kiernan's rate of bin loading affected Defendant's business substantially, Defendant had other options to accommodate his disability instead of banning him from returning. Defendant could ensure equal access for Mr. Kiernan while accommodating other customers at the resale counter by, for example, designating a space for Mr. Kiernan to place his books apart from the bin area.

53. Because Defendant has refused to make reasonable accommodation to allow Mr. Kiernan full and equal enjoyment of its bookstore, and, in fact, has banned him from entry based on features of his disability, it has unlawfully prevented Mr. Kiernan from entering and fully and equally enjoying Defendant's services.

54. Hence, Defendant has unlawfully discriminated against Mr. Kiernan, in violation of his rights under the ADA and ADA Regulations, by denying him "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of" its bookstore.

55. Because Defendant has unlawfully refused to make their bookstore accessible to Mr. Kiernan, it has caused and continues to cause him irreparable harm. Mr. Kiernan is unable to use the services offered by Defendant, though he would like to continue to buy and sell books at their bookstore.

56. Mr. Kiernan has suffered emotional distress, mental anguish, increased anxiety and stress, increased sleep disturbance, increased depression, and loss of income as a result of Defendant's ban.

57. Mr. Kiernan suffered serious depressive episodes as a result of Defendant's ban and its consequences, including a depressive episode severe enough to require an emergency visit to a mental health center on December 31, 2014.

58. Mr. Kiernan has suffered, and continues to suffer, from loss of access to and use of the $143.04 of store credit Defendant issued him in exchange for his used books prior to the ban. Defendant retained the books Mr. Kiernan sold in exchange for the store credit, but Mr. Kiernan can neither spend this money at Defendant's bookstore, nor exchange it for cash value or repossess the books he sold.

59. There are no administrative remedies Mr. Kiernan can or must exhaust prior to filing suit under the ADA. However, as set forth above, Mr. Kiernan has made an attempt to resolve this matter prior to filing this action. Mr. Kiernan has concluded that further attempts to resolve this case or to engage in any activities short of litigation would be futile.

60. Unless Defendant is enjoined to comply with the ADA, the irreparable harm suffered by Mr. Kiernan will continue.

61. Therefore, Mr. Kiernan prays that this Court Enjoin Defendant to comply with the ADA and ensure that Mr. Kiernan can enter its bookstore.

62. This action only seeks to remedy Defendant's refusal to ensure that Mr. Kiernan can enter and buy and sell books at its bookstore. It does not address or seek to remedy any ADA violations or architectural barriers not specifically alleged herein. Mr. Kiernan acknowledges that there may be other ADA violations and other areas of inaccessibility in Defendant's bookstore; however, these areas are not now known nor alleged in the present action. As this action does not address any other possible ADA violations not specifically alleged above, Mr. Kiernan reserves the right to bring a separate action to request appropriate relief and remedy of any such other ADA violations.

## Prayer for Relief

WHEREFORE, Mr. Kiernan respectfully requests that this Court:

A. Issue a permanent injunction prohibiting Defendant from discriminating against Mr. Kiernan by preventing his entrance to and full enjoyment and use of their bookstore;

B. Issue a permanent injunction requiring Defendant to amend its policies and procedures to comply with the ADA and its regulations, and provide training on such for each of its employees, to ensure the bookstore and all of its services are accessible and usable by individuals with disabilities;

C. Order the Defendant to allow Mr. Kiernan to immediately submit for purchase consideration the amount of books he could have submitted during the period he was banned from the bookstore (calculated at a rate of 4 bins per week); and to evaluate

these books for purchase as it would for books submitted by "infrequent sellers," as defined by Defendant.

D. Order Defendant to pay reasonable attorneys' fees, litigation costs, and other expenses incurred by Mr. Kiernan; and

E. Award any such other and further relief as it deems necessary, just, and proper.

DATED: 17 March 2015

Respectfully submitted,

Disability Law Center of Virginia
Attorneys for Plaintiff
1910 Byrd Avenue
Suite 5
Richmond, VA 23230
Telephone: (804) 225-2042
Fax: (804) 662-7057

After 3 April 2015:
1512 Willow Lawn Drive
Suite 100
Richmond, VA 23230

BY: _____
Kalena C.M. Ek
Virginia State Bar Number: 74858

Steven M. Traubert
Virginia State Bar Number: 41128
Disability Law Center of Virginia
Attorneys for Plaintiff
1910 Byrd Avenue, Suite 5
Richmond, VA 23230
Telephone: (804) 225-2042
Fax: (804) 662-7057
E-mail: Kalena.Ek@dlcv.org
Steven.traubert@dlcv.org

I declare under penalty of perjury that the foregoing is true and correct.

Signed and verified by: _____Dan Kiernan_____   3/17/15

                            Dan Kiernan                             Date

Subscribed and Sworn to before me, this 17 date of March, 2015

_____

Notary Public

STEVEN M TRAUBERT
COMMONWEALTH
REGISTRATION NO.
7521358
MY COMM. EXPIRES
02/29/2016
OF VIRGINIA
NOTARY PUBLIC

My Commission Expires: 2/29/16